UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
                                           :

ROBERT DEAN ZENIE,                      :

                             :

                         Plaintiff,       :

                             :              18-CV-4659 (JMF)

            -v-                  :

                             :            OPINION AND ORDER

COLLEGE OF MOUNT SAINT VINCENT and   :
BARIMA YEBOAH,                  :

                             :

                      Defendants.     :

                             :
---------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Robert Dean Zenie is the former full-time Assistant Athletic Director and head wrestling coach at the College of Mount Saint Vincent (the "College"), a small private college in the Bronx, New York.  In this suit, he brings age discrimination, hostile work environment, and retaliation claims, under federal, state, and local law against the College; and retaliation and wrongful-interference-with-business-relations claims against Barima Yeboah, the College's Athletic Director.  *See* ECF No. 1 ("Compl.").  Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Zenie's claims.  *See* ECF Nos. 61 ("Mot.") & 65 ("Mem.").  For the reasons that follow, their motion is granted.

## BACKGROUND

       The following relevant facts, taken from the Complaint and the admissible materials submitted by the parties in connection with Defendants' motion for summary judgment, are

either undisputed or described in the light most favorable to Zenie.  *See Simon v. City of New York*, 893 F.3d 83, 91 (2d Cir. 2018).[1]

In August 2015, the College hired Zenie, then forty-six years old, to serve as its head wrestling coach and assistant director of athletics for facilities and operations.  *See* ECF No. 73 ("Pl.'s 56.1 Resp."), ¶¶ 1-3, 15-16.  Zenie's responsibilities included managing and scheduling use of the College's athletic facilities, proposing his wrestling team's budget (subject to the Athletic Director's approval), and coaching his student-athletes.  Pl.'s 56.1 Resp. ¶¶ 17, 75-77; ECF No. 72 ("Zenie Aff."), ¶¶ 10.  Notably, before he was hired by the College, Zenie had little or no experience working in collegiate athletics, whether in an administrative capacity or as a head coach responsible for more than sixteen athletes.  *See* ECF No. 64-2 ("Zenie Dep."), at 19-20.  The only experience Zenie had at the collegiate level was from 1993 to 1994, when he served as a wrestling coach at Wagner College.  *See id.* at 18-19; Pl.'s 56.1 Resp. ¶¶ 8-13.

Zenie and most of the other Assistant Athletic Directors employed by the College were also responsible for coaching a team.  Pl.'s 56.1 Resp. ¶¶ 17-18.  Zenie's co-workers included Jon Muller, born in 1984 and employed since June 2016 as Assistant Athletic Director and the

---

[1]    As Defendants note in their reply memorandum of law, *see* ECF No. 85, at 1-2, Zenie's Local Rule 56.1 counterstatement of undisputed facts lacks proper citations to admissible evidence, *see, e.g.*, ECF No. 74 ("Pl.'s 56.1 Stmt."), ¶¶ 1-2, 7, 27, 29, 44.  Accordingly, the Court disregards Zenie's "counterstatement," unless otherwise noted.  Similarly, the Court largely rejects the documents attached to Zenie's counsel's declaration, *see* ECF No. 78, and any citations thereto, because the attached documents are not self-authenticating "and the affirmation of plaintiff's attorney is insufficient to establish their admissibility as hearsay under Federal Rule of Evidence 803."  *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 136 n.10 (E.D.N.Y. 2015) (rejecting unauthenticated documents attached to plaintiff's counsel's affidavit in opposition to a summary judgment motion as inadmissible hearsay); *see also Lugo v. City of New York*, 518 F. App'x 28, 30 (2d Cir. 2013) (summary order) ("Federal Rule of Civil Procedure 56 requires that affidavits be 'made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" (citing Fed. R. Civ. P. 56(c)(4)).

head coach for men's baseball, and Stephanie DiLegge, born in 1991 and employed from September 2015 to August 2017 as Assistant Athletic Director and head coach for women's lacrosse.  ECF No. 62 ("Samuels Aff."), ¶¶ 8-9; Pl.'s 56.1 Resp. ¶ 18.  The athletic department was organized hierarchically, with an Athletic Director overseeing the Assistant Athletic Directors and Associate Athletic Directors.  At all times relevant to this case, Barima Yeboah served as the director of athletics, having been promoted to the position from Associate Athletic Director on approximately January 30, 2017.  Yeboah worked alongside or under Melissa Samuels, the director for human resources; Kelli Bodrato, the College's dean of students who supervised the College's athletic department; and Dr. Charles Flynn, the President of the College since approximately 2000.  Samuels Aff. ¶¶ 1-4; Pl.'s 56.1 Resp. ¶¶ 4-7.

Significantly, not long after Yeboah was promoted to Athletic Director, Zenie took issue with his leadership and management of the athletic department.  One of the first few conflicts, to be continued throughout 2017, concerned the budget for the wrestling team.  As early as February 2017, Zenie complained to Yeboah that he needed to purchase equipment and uniforms for his wrestlers and polos for the coaches; he requested, at a minimum, that he be allowed to use the more than $3000 left over from the 2016-2017 season to increase inventory for his team. Zenie Dep. 79-104; Pl.'s 56.1 Resp. ¶¶ 80-84; *see generally* Zenie Aff.  In March 2017, at the end of the wrestling season, Zenie revisited the issue with Yeboah, who once again denied the request to use extra funds from the previous year to buy the requested items, citing the potential need to reallocate funds to other teams.  *See* Zenie Dep. 85-86.  Zenie, noting an increase in recruits for the 2017-2018 season, submitted his proposed budget during the regular budgeting process in May 2017, once again requesting an increase in funds.  When initial budgets were released at the end of June 2017, Zenie registered his dissatisfaction with Yeboah, who took

account of his concerns and marginally increased the travel budget in the finalized budget released in the middle of July 2017.  *See* Pl.'s 56.1 Resp. ¶¶ 84-88.

At or about the same time, two Associate Athletic Director positions became available. Sometime at the beginning of 2017, Dr. Flynn, the College President, decided to couple these positions with the men's and women's head basketball coaching positions, respectively.  ECF No. 64-7 ("Bodrato Dep."), at 64; Pl.'s 56.1 Resp. ¶¶ 39-40.  The department considered, among other candidates, James Mooney, who had been employed by the College as assistant men's basketball coach from October 14, 2014, until he resigned effective September 15, 2015. Samuels Aff. ¶ 6; Pl.'s 56.1 Resp. ¶ 51.  An alumnus of the College, Mooney had also played on the varsity basketball team and, following graduation, coached basketball at the high school level.  ECF Nos. 64-8, at 4; 64-9, at 38; 64-5 ("Mooney Dep."), at 39.  Mooney, then in his thirties (he was born in 1984), ECF No. 62, at 11, had little collegiate-level administrative experience, but he expressed a determination to make up for it, with the College's support, by taking a three-day workshop on NCAA rules and practices.  ECF No. 64-9, at 38, 49. Nevertheless, Zenie took issue with Mooney's possible hire, frequently commenting that he believed Mooney was young and inexperienced.  Zenie, although lacking in any experience as a basketball coach, believed himself to be qualified for the dual position and applied; he asked, in the alternative, to serve only as an Associate Athletic Director.  Pl.'s 56.1 Resp. ¶¶ 63-67.

Zenie was not offered the position.  He, along with Muller and DiLegge — then thirty-three years old and twenty-six years old, respectively, and applicants for the same dual positions — then asked Dean Bodrato whether the Associate Athletic Director position could be coupled with another head coaching position; Dean Bodrato, in turn, relayed the message to President Flynn.  *See id.* ¶¶ 46-47, 60-62; Zenie Dep. 124-27; Bodrato Dep. 68-69.  President Flynn

conveyed through Dean Bodrato that that was not possible, citing a desire to have the position matched with the head coach of one of the leading sports teams at the College. Pl.'s 56.1 Resp. ¶¶ 46-48; ECF No. 64-9, at 50. In late April 2017, in the aftermath of his failed promotion, Zenie complained to Samuels in Human Resources that he believed the College was unfairly considering young, inexperienced candidates like Mooney. Zenie Dep. 127-28; ECF No. 64-9, at 37. His complaint was not formally addressed. On May 1, 2017, the College, through President Flynn and at the advice of Yeboah and Dean Bodrato, formally hired Mooney as head coach of men's basketball and Associate Athletic Director. Pl.'s 56.1 Resp. ¶¶ 50-52. On September 5, 2017, the College filled the second position by hiring Tiffany Smart, a former basketball player with coaching and administrative experience, as head coach of women's basketball and Associate Athletic Director. Pl.'s 56.1 Resp. ¶ 69; Samuels Aff., Ex. E.

In April 2017, Zenie received a formal evaluation noting that he was "very good" at various aspects of his job. *See* Zenie Dep. 77. After the first Associate Athletic Director position was filled by Mooney, however, Zenie continued to voice disagreement with the department's hiring process and what he viewed as Mooney's inexperience and Yeboah's poor leadership. Complaints to Human Resources about Zenie's workplace demeanor and his perceived interference with the hiring process followed; Mooney, for example, reported that he had observed Zenie on at least one occasion criticizing the department in front of potential hires and other co-workers. *See* ECF No. 64-9, at 23-24, 51, 79, 83-84, 89. During all of this, Zenie was also asked to perform facilities maintenance tasks that had previously been assigned to other departments.

Things came to a head with two events in the late summer and fall of 2017. First, in mid-August, the day after Zenie returned from vacation, Yeboah required him to make a presentation

at an all-day staff meeting.  With little time to prepare, Zenie felt like he had been put on the spot

and embarrassed in front of his peers.  Zenie Dep. 140-45.  Second, on September 1, 2017, Zenie

had a meeting with Yeboah and Dean Bodrato to discuss, among other things, coordinating with

the facilities department to set up a lockbox to hold the keys for the department's vans.  *Id*. at

149-53.  After Yeboah left the meeting, Zenie stayed back to formally complain to Dean Bodrato

that he believed Yeboah was treating him differently from the others.  Zenie did not specifically

mention that he believed Yeboah's animus was based on his age, but rather noted the budget and

the staff meeting as evidence that Yeboah was targeting him.  *See id*. at 140-46; ECF No. 64-9, at

113.  Although Dean Bodrato asked Zenie to follow up with an email listing his grievances, he

never did.  Zenie Dep. 146.  On September 5, 2017, Zenie received a letter from Dean Bodrato

that, among other things, described the subject of the September 1st meeting as Zenie's souring

demeanor and how it was affecting his "professional judgment when interacting with [his]

colleagues."  ECF No. 64-9, at 40.  Viewing Dean Bodrato's letter to be a gross

misrepresentation of the meeting held only days before and feeling that he had no one else to

turn to at the College, Zenie resigned that same day.  ECF No. 62, at 8; Dep. 156-57; Compl.

¶¶ 64-66.

On January 26, 2018, Zenie filed a charge of age discrimination with the United States

Equal Employment Opportunity Commission ("EEOC").  *See* Compl. ¶ 6.  The EEOC issued a

Right to Sue Notice dated February 28, 2018.  *See id*.  On May 25, 2018, Zenie filed the eight-

count Complaint in this instant action.  He alleges a slew of claims against the College, invoking

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human

Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq*.  *See* Compl. ¶¶ 67-120, 138-46. And against Yeboah, he brings a retaliation claim under Title VII and the NYCHRL as well as a tortious interference claim under New York law.  *See id.* ¶¶ 95-106, 121-37, 147-52.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *see Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 420 (2d Cir. 2018), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (internal quotation marks omitted).  As the Second Circuit has observed, courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often a central factual issue.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87

(2d Cir. 1996).  Summary judgment, however, "remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997).  To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence." *Anderson*, 477 U.S. at 252.  Just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts.  [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation and internal quotation marks omitted).  For their part, courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).

## DISCUSSION

Zenie brings two sets of claims under federal law: claims for age discrimination and a claim for retaliation.  (As discussed below, for reasons that are not clear he brings the latter under Title VII, not the ADEA, although the only remotely plausible claim is one for retaliation in violation of the ADEA.)  In addition, he brings various claims under state or local law: (1) analogous claims for age discrimination under the NYSHRL and NYCHRL; (2) hostile work environment claims under the NYSHRL and NYCHRL; and (3) a claim against Yeboah of tortious interference with business relations under New York law.[2]  The Court will discuss Zenie's federal claims first and then turn to his claims under state and local law.

---

[2]     For reasons that are not clear, Zenie presses his hostile work environment claims under only the NYSHRL and the NYCHRL.  He does not allege an analogous claim under the ADEA.

**A. Federal Age Discrimination Claims**

The Court begins with Zenie's discrimination claims under the ADEA.  Like claims brought pursuant to Title VII, they are examined using the well-established *McDonnell Douglas* burden-shifting framework.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under that framework, the plaintiff bears the initial burden to establish a *prima facie* case of age discrimination by showing that (1) he was within the protected age group — that is, older then forty; (2) he was qualified for the position; (3) he experienced adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.  *See id.* at 107; *see also* 29 U.S.C. § 631(a).  If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer "to articulate 'some legitimate, nondiscriminatory reason' for its action."  *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802).  Assuming the employer does so, the presumption of discrimination "drops from the picture," and "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  A plaintiff asserting an ADEA claim against a private-sector employer, as Zenie does here, must "show that the employer's determination was in fact the result of discrimination" — more specifically, he "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  *Gorzynski*, 596 F.3d at 106 (internal quotation marks omitted) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009)).

Applying these standards here, Zenie's claims of age discrimination under the ADEA fail as a matter of law.  The crux of Zenie's claims is that he was not promoted to the position of

Associate Athletic Director, which came with the additional responsibility of serving as head coach of either the men's or women's varsity basketball team.  Instead, the College chose Mooney, a thirty-two-year-old, and Smart, a thirty-five-year-old, to fill the two openings.  ECF No. 80 ("Opp'n"), at 10-11.  But the evidence does not support Zenie's conclusory assertion that he was qualified for the job, let alone more qualified that Mooney (and Smart), for a simple reason: He had zero experience coaching basketball.  *See* Pl.'s 56.1 Resp. ¶ 67.  Zenie contends that the administrative responsibilities of the job were predominant, citing as evidence the fact that the salary for the dual position was $60,000 to $65,000 while the salary for a part-time coach was only $10,000.  Opp'n 12-13; Pl.'s 56.1 Resp. ¶ 41; ECF No. 62, at 10, 21.  But that evidence does not carry the weight that Zenie thinks it does and, in any event, it is ultimately beside the point.  Zenie would have been required to coach a basketball team and there is no evidence in the record that he was qualified to do so.  Given that Zenie lacked relevant experience with respect to at least one critical aspect of the position, Zenie fails to "show that [his] credentials were so superior to the credentials of the person[s] selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over the plaintiff for the job in question."  *Szewczyk v. Saakian*, 774 F. App'x 37, 40 (2d Cir. 2019) (summary order) (internal quotation marks and citation omitted); *see also DeSalvo v. Volhard*, 312 F. App'x 394, 396 (2d Cir. 2009) (summary order) (affirming the grant of summary judgment against a plaintiff alleging age discrimination for failure to promote where the plaintiff was not qualified for one aspect of the job for which she applied).

Additionally, the record does not support an inference that the College's failure to promote Zenie was due to his age, let alone that age was the but-for cause of that decision. Zenie, for instance, does not show that he was treated differently from his younger co-workers.

*See, e.g.*, *Hatch v. Brennan*, 792 F. App'x 875, 881 (2d Cir. 2019) (summary order) (affirming plaintiff's failure to establish prima facie case where comparators were not treated differently based on their age).  As Zenie acknowledges, the College also declined to promote two other employees who, like him, lacked experience coaching basketball, but, unlike him, were well under the age of forty.  Pl.'s 56.1 Resp. ¶¶ 60-62 (affirming that employees John Muller and Stephine DiLegge were thirty-three years old and twenty-six years old, respectively, at the time Mooney was hired).  Zenie contends that the decision to couple the role of Associate Athletic Director with the role of basketball head coach was itself pretextual because the decision was made only after Zenie offered to fill the standalone administrative position.  Opp'n 12; Pl.'s 56.1 Stmt. ¶ 44.  But Zenie cites to no admissible evidence in support of that contention.  Moreover, even if that chronology were accurate, President Flynn, who is himself apparently in the protected class, *see* ECF No. 64-6, at 17, was the one to mandate the combination, *see* Pl.'s 56.1 Resp. ¶¶ 40-41.  "[W]here the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes . . . discrimination is weakened."  *Rosenfeld v. Hostos Cmty. Coll.*, No. 10-CV-3081 (JMF), 2013 WL 1285154, at *7 (S.D.N.Y. Mar. 29, 2013) (citation omitted).  To be sure, President Flynn's membership in the protected age group is not dispositive.  But it is probative where, as here, there is no other evidence in the record to support an inference that the College's decision not to promote Zenie was based on his age.

Also absent from the record is any evidence that those involved in the decision — President Flynn, Dean Bodrato, and Yeboah — made disparaging comments about Zenie's age, adversely compared him to candidates due to any difference in age, or fostered an environment that disfavored older employees.  *Cf. Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003)

(holding that a Caucasian male over the age of forty sufficiently alleged race and age discrimination when he was denied a promotion in favor of a "significantly less qualified African-American man" and was told by a someone involved in the decision-making process "You haven't been promoted.  You're not going to be promoted.  Look around you.  Everybody else is younger than you.").  At most, the facts show that after Zenie was denied the first open position, Yeboah and the others critiqued his job performance, calling him "cantankerous" and "poisonous to morale."  Opp'n 18; Pl.'s 56.1 Stmt. ¶ 95; *see also* ECF No. 64-9, at 87.  But neither comment is age-related or necessarily unwarranted given Zenie's contentious relationship with Yeboah and his penchant for criticizing the athletic department and his supervisor in front of both other staff and potential candidates. *See* ECF No. 64-9, at 23, 25, 83-84, 87, 90-91.  Even if these few comments could be construed as age-related, they are too sparse and insufficient to support a finding of age-based discrimination.  *See, e.g.*, *Mikinberg v. Bemis Co.*, 555 F. App'x 34, 36 (2d Cir. 2014) (summary order) (holding that sparse instances of being called an "old man" were insufficient to establish that termination due to "poor performance and lack of leadership" was pretextual); *Rosenfeld*, 2013 WL 1285154, at *5 (finding that referring to the plaintiff as "el viejo" — Spanish for "the old one" — and other sparse, age-related comments did not raise an inference of age-based discrimination).

To the extent that Zenie argues that Defendants failed to provide him with clear reasons for not promoting him, that alone is insufficient to establish discriminatory intent.  *See, e.g.*, *Cho v. City of New York*, 549 F. App'x 15, 18 (2d Cir. 2013) (summary order) ("[W]ithout more, the fact that the [defendant] did not provide a reason for not hiring [plaintiff] does not give rise to an inference that the unstated reason was discriminatory [based on age].").  Moreover, as discussed, the record does in fact reflect that there was good reason to hire Mooney over promoting Zenie:

Mooney's previous employment with the College as assistant coach to the basketball team (and former participation on the team while a student at the school), ECF No. 64-8, at 4; his "several years of experience coaching [basketball] at the high school level," ECF No. 64-9, at 38; his "enthusiasm," *id.* at 75; and his intention to take a three-day training intensive course session on the NCAA rules and practices, *id.* at 38, were legitimate reasons for hiring him over Zenie.  By contrast, Zenie not only lacked even an iota of experience as a basketball coach, but he also displayed an increasingly contentious attitude that, whether it was justified or not, corroded team morale.  *See id.* at 23, 25, 83-84, 87, 90-91; *cf. Mikinberg*, 555 F. App'x at 36 (affirming summary judgment in favor of an employer where there was a legitimate business reason to terminate supervisor due to poor performance and lack of leadership).[3]  The Second Circuit has cautioned that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion."  *Knight v. Nassau Cty. Civil Serv. Comm'n*, 649 F.2d 157, 161 (2d Cir. 1981).  But where, as here, "an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn."  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)).

Finally, to the extent that Zenie contends that he was constructively discharged in violation of the ADEA, *see* Compl. ¶ 69, his claim fails for an additional reason.  A "constructive

---

[3]      Notably, as Zenie himself acknowledges, the Complaint points to another reason that Yeboah may have harbored resentment toward Zenie: In or around June 2017, Zenie testified against Yeboah as part of an NCAA investigation into an illicit loan payment between one of the soccer players and the soccer coach's father.  Compl. ¶¶ 39-46.  To the extent that Yeboah took adverse employment actions against Zenie on that basis, of course, it would not constitute age discrimination.

discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Trachtenberg v. Dep't of Educ. of City of New York,* 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).  Working conditions are intolerable when, viewed as a whole, they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Walsh v. Scarsdale Union Free Sch. Distr.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019) (citation omitted).  Applying those standards here, the Court concludes that no reasonable jury could find that Zenie was constructively discharged.  Zenie contends that his working conditions were rendered intolerable because he was denied a promotion; was not allowed to use leftover funds from the wrestling team's 2016-2017 budget to buy equipment for his team; was subjected to negative, unwarranted commentary about his job performance; was denied his proposed budget for the 2017-2018 season; and was sent a letter from Dean Bodrato that negatively discussed his work performance.  Pl.'s 56.1 Resp. ¶¶ 32-36; Zenie Dep. 155-61.  But — separate and apart from the dearth of evidence linking any of these actions to Zenie's age — courts have repeatedly held that an employee's dissatisfaction with his job duties or performance evaluation, criticism by a supervisor, being unfairly disciplined, not being promoted to a desired position, and demotion do not meet the "intolerable" threshold.  *See, e.g.*, *Petrosino v. Bell Atl*., 385 F.3d 210, 231 (2d Cir. 2004) (affirming summary judgment for an employer with respect to the plaintiff's constructive discharge claim where the plaintiff complained of dissatisfaction with work assignments and of being overlooked for a promotion and an increase in pay); *Spence v. Maryland Cas. Co*., 995 F.2d 1147, 1156-58 (2d Cir. 1993) (holding that criticism for poor performance, denial of a salary increase, being placed on probation, rough treatment by a supervisor, and comments that a supervisor wished the plaintiff to become ill did

not suffice); *see also Rogers v. Roosevelt Union Free Sch. Dist.*, 553 F. App'x 88, 88-89 (2d Cir.

2014) (summary order) (affirming summary judgment against a plaintiff alleging constructive

discharge where, among other things, she was denied school supplies, left off a school-wide

email distribution list, and not allowed to teach her preferred classes).  Simply put, even viewed

holistically and in the light most favorable to Zenie, such conditions, while perhaps "difficult" or

"unpleasant" for Zenie, *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (summary

order), do not satisfy the high burden of showing "working conditions so intolerable that a

reasonable person would have felt compelled to resign," *Pennsylvania State Police v. Suders*,

542 U.S. 129, 147 (2004).

  In short, whether framed as a failure-to-promote claim or a constructive discharge claim,

Zenie's claims of age discrimination in violation of the ADEA fall short.  Accordingly,

Defendants' motion for summary judgment with respect to those claims must be and is granted.

## B.  Federal Retaliation Claim

  Zenie also brings a retaliation claim against the College and Yeboah, but strangely he

does so pursuant to Title VII, not the ADEA.  *See* Compl. ¶¶ 95-106.  Title VII has no

application here, however, as it is concerned with "race, color, religion, sex, or national origin,"

not age.  42 U.S.C. § 2000e-2(a); *see, e.g.*, *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d

453, 460 (N.D.N.Y. 2013); *see also, e.g.*, *Benn v. City of New York*, 482 F. App'x 637, 638 (2d

Cir. 2012) ("[P]rotected activity [for purposes of a Title VII retaliation claim] . . . refers to action

taken to protest or oppose statutorily prohibited discrimination [under Title VII]." (internal

quotation marks and citation omitted)).  More or less conceding the error, Zenie argues in his

opposition to Defendants' motion that "[t]he retaliation component under the ADEA is

substantially identical to a Title VII claim" and that the Court should therefore treat the claim as

an "age-related retaliation" claim under the ADEA.  Opp'n 16.  In the alternative, he requests

leave to amend the Complaint.  *See id.* at 16 n.6.  Whether the Court treats Zenie's Complaint as

containing a scrivener's error or considers his request to amend, there is no reason to refrain

from addressing the substance of his ADEA retaliation claim, as it is fully briefed.

For starters, there is no individual liability under the ADEA (or Title VII, for that matter),

*see, e.g.*, *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2020

WL 4547317, at *2 (S.D.N.Y. Aug. 6, 2020) (citing cases), so there is no basis for Zenie's claim

against Yeboah.  As for Zenie's ADEA retaliation claim against the College, it too is governed

by the *McDonnell Douglas* framework.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843

(2d Cir. 2013).  To establish a *prima facie* case of retaliation, a plaintiff must show (1)

participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3)

an adverse employment action; and (4) a causal connection between the protected activity and

the adverse employment action.  *Id*. at 844.  If the plaintiff makes that showing, the burden shifts

to the employer to articulate some legitimate, non-retaliatory reason for the employment action.

*See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019).  If the defendant

carries that burden, the presumption of retaliation drops out of the picture and the plaintiff must

demonstrate that the defendant's proffered reason is a mere pretext for retaliation.  *See Zann*

*Kwan*, 737 F.3d at 843.  Significantly, a plaintiff "alleging retaliation in violation of [the ADEA]

must show that retaliation was a 'but-for' cause of the adverse action, and not simply a

'substantial' or 'motivating' factor in the employer's decision."  *Id*. (citing *Univ. of Tex. Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 348, 360 (2013)).

Measured against these standards, any ADEA retaliation claim against the College falls

woefully short.  For one thing, Zenie does not clearly identify the protected activity at issue.  The

closest he comes is to allege that he complained to Human Resources that the College was showing favoritism towards younger, inexperienced candidates.  *See* Compl. ¶¶ 97, 106; Opp'n 16.[4]  But notably, those complaints occurred after Mooney was hired for the position in May 2017 and after Yeboah allegedly began singling Zenie out with respect to his budget.  Needless to say, a plaintiff cannot bring a retaliation claim where the alleged retaliation took place before the plaintiff's protected activity.  *See, e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (noting in employment context that, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *James-Gray v. Hanes Hosiery, Inc.*, No. 95-CV-9950 (LMM), 1998 WL 525819, *12 (S.D.N.Y. Aug. 21, 1998) (holding that adverse conduct cannot be deemed retaliatory when "the conduct began at least two months before" plaintiff's protected activity).  Nor does Zenie point to any evidence that President Flynn — the person who made the decision to hire Mooney — even knew about his complaints.  And finally, to the extent that Zenie cites actions taken later — for instance, his being put on the spot during a meeting in August 2017 and his "constructive discharge" on September 5, 2017 — he identifies no evidence linking those actions to his complaints many months earlier.  *See, e.g.*, *Williams v. City of New York*, No. 11-CV-9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."); *see*

---

[4]     Zenie does not appear to argue that his September 1, 2017 meeting with Yeboah constituted protected activity for purposes of the ADEA.  Nor could he as there is no evidence that he raised any complaint relating to age discrimination in the meeting.  *See, e.g.*, *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 577 (S.D.N.Y. 2014) (holding that to establish a retaliation claim the plaintiff must have complained about discrimination based on a protected characteristic — that is, conduct in violation of the underlying statute).

*also, e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under [the ADEA], but without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext.").  In short, any ADEA retaliation claim must be and is dismissed.

## C.  Claims Under State and Local Law

That leaves only Zenie's claims under state and local law: (1) his analogous claims for age discrimination and retaliation under the NYSHRL and NYCHRL; (2) his hostile work environment claims under the NYSHRL and NYCHRL; and (3) his claim against Yeboah for tortious interference with business relations.  With Zenie's sole federal claims dismissed, the Court must decide whether to exercise supplemental jurisdiction over these claims.[5]

A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The statute does not create "a mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the

---

[5]      The parties did not brief the question of whether the Court should exercise supplemental jurisdiction over Zenie's state and local claims in the event that it dismissed his federal claims.  Nevertheless, the law is clear that the Court may decide that question *sua sponte* in this setting.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 84 (2d Cir. 2018) ("[A]n opportunity to be heard on whether to exercise supplemental jurisdiction may be inherent in the course of pre-trial proceedings such as those resolving motions . . . for summary judgment.  In such situations, a district court need not provide a separate opportunity to be heard beyond the briefing and resolution of such motions.").

remaining state-law claims." *Id.*; *see also Kolari v. N. Y. Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (citing cases) (internal quotation marks omitted)).

Despite the general presumption, the Court concludes that, in the interest of judicial economy, it should exercise supplemental jurisdiction over Zenie's NYSHRL age discrimination and retaliation claims, as it is well established that the standards for evaluating them are the same as the standards under the ADEA. *See Caesar v. Riverbay Corp.*, No. 15-CV-8911 (NRB), 2017 WL 6887597, at *12 (S.D.N.Y. Dec. 27, 2017). That is, given the Court's decision on Zenie's ADEA claims, "it would be the height of inefficiency to defer a decision on [his analogous] NYSHRL claim[s] to a state court." *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017); *accord Avery v. DiFiore*, No. 18-CV-9150 (JMF), 2019 WL 3564570, at *5 (S.D.N.Y. Aug. 6, 2019). Instead, they are dismissed for the same reasons. By contrast, the Court declines to exercise supplemental jurisdiction over Zenie's other state and local claims, either because he alleges no federal counterparts or, in the case of his analogous NYCHRL claims, because they are subject to a different standard and must be analyzed separately. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that NYCHRL claims

"require[] an independent analysis").  In light of that, and because the law governing claims under the NYCHRL is still developing, Zenie's other state and local claims — his hostile work environment claim under the NYSHRL, all of his claims under the NYCHRL, and his tortious-interference claim against Yeboah — present questions "best left to the courts of the State of New York."  *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (declining to reach the question whether the plaintiff had a valid claim under the NYCHRL after dismissing his federal claim); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 92-93 (2d Cir. 2011) (affirming dismissal of the plaintiff's federal claims and declining to decide his claims under state and city law on the ground that they were "arguably governed by different legal standards" and the relevant law of New York was "still developing"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining supplemental jurisdiction over a NYCHRL claim after dismissing claims under Title VII and the NYSHRL).  Accordingly, they are dismissed without prejudice to his refiling them in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Zenie's Complaint is dismissed in its entirety.  In the case of his hostile work environment claim under the NYSHRL, all of his claims under the NYCHRL, and his tortious-interference claim against Yeboah, such dismissal is without prejudice to refiling the claims in state court.

The Clerk of Court is directed to terminate ECF No. 61, to enter judgment in Defendants' favor, and to close the case.

SO ORDERED.

Dated: September 14, 2020
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

20